Alex R. Straus SBN 321366
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive
Beverly Hills, CA 90212
Tel.: (917) 471-1894
Fax: (310) 496-3176
Email: astraus@milberg.com

*Counsel for Plaintiffs and*
*the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL ALIVA, MICHAEL SIZEMORE, CAROLE SCHAUER, SHEREE SILVA, OMAR ALDAMEN individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>     v.<br><br>GLANBIA BUSINESS SERVICES, INC., GLANBIA, INC., GLANBIA INGREDIENTS SERVICES, INC., GLANBIA NUTRITIONALS, INC., GLANBIA NUTRITIONALS SERVICES, LLC, GLANBIA PERFORMANCE NUTRITION, INC.,<br><br>                  Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

# CLASS ACTION COMPLAINT

1. Plaintiffs Emanuel Aliva, Michael Sizemore, Carole Schauer, Sheree Silva, Alain Michael, Omar Aldamen ("Plaintiffs"), through their undersigned attorneys, bring this Class Action Complaint against Glanbia Business Services, Inc., Glanbia, Inc., Glanbia Ingredients Services, Inc., Glanbia Nutritionals, Inc., Glanbia Nutritionals Plant Nutrition, LLC, Glanbia Nutritionals Services, LLC, Glanbia Performance Nutrition, Inc., Glanbia Performance Nutrition (Manufacturing), Inc., ("Defendants"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

2. This is a civil class action brought individually by Plaintiffs on behalf of consumers who purchased at least one of the following of Defendants' products:

    a. SlimFast Diabetic Friendly Meal Replacement Powder (Chocolate Milkshake and Vanilla Milkshake)

    b. Slimfast Diabetic Weight Loss Snack (Peanut Butter Cup and Nutty Caramel & Chocolate Clusters)

    c. Slimfast Diabetic Weight Loss Meal Bar (Creamy Chocolate Mousse, Double Chocolate Cookie Dough, and Peanut Butter Chocolate) (the "Products").

3. The Products are sold online and in stores throughout the United States including at mass retailers such as Amazon.com. Walmart, Target, CVS, and on the SlimFast website, Slmfast.com.

4. It is prominently represented on the packaging that the Products are for "Diabetic Weight Loss".

5. The advertising constitute health claims and drug claims, which were not authorized by the Food and Drug Administration ("FDA"), and the Products are therefore misbranded pursuant to Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.,* and its labeling

# CLASS ACTION COMPLAINT

regulations, including those in 21 C.F.R. § 101.  The Products are misbranded and illegal for the additional reason that they misleadingly purport to prevent and treat diabetes. rendering them "drugs," which require FDA preapproval that Defendants has not obtained.  The Products are also misbranded pursuant to the California Sherman Law California Health & Safety Code § 110100 *et seq*., and violate California's consumer protection laws, as detailed below.

6.      Defendants' prominent and systematic mislabeling of the Products and its false and deceptive advertising form a pattern of unlawful and unfair business practices that harms the public and, if unstopped, could lead to substantial societal harm.

Plaintiffs brings this suit to halt Defendants' unlawful sales and marketing of its Products and for damages they sustained as a result of the illegal sales and false and misleading marketing. Declaratory and injunctive relief is of particular importance given the likely consequences of Defendants' actions.

## PARTIES

Plaintiff Emanuel Aliva is a resident and citizen of Los Angeles, California in Los Angeles County.

Plaintiff Michael Sizemore is a resident and citizen of Cameron Park, California in El Dorado County.

Plaintiff Carole Schauer is a resident and citizen of Apple Valley, California, San Bernardino County.

Plaintiff Sheree Silva is a resident and citizen of Gridley, California in Butte County.

Plaintiff Omar Aldamen is a resident and citizen of Yuba City, California in Sutter County.

7.      Defendant Glanbia Business Services, Inc. is a Delaware corporation. Upon information and belief, Glanbia Business Services, Inc. markets, distributes, and retails its Products throughout the United States, including in California and in this District, through brick-and-mortar stores, and at through numerous retailers online.

8.      Defendant Glanbia Inc. is a Delaware corporation. Upon information and belief, Glanbia Inc. markets, distributes, and retails its Products throughout the United States, including

CLASS ACTION COMPLAINT

in California and in this District, through brick-and-mortar stores, and at through numerous retailers online.

9.      Defendant Glanbia Ingredients Services, Inc. is a Delaware corporation. Upon information and belief, Glanbia Ingredients Services, Inc. markets, distributes, and retails its Products throughout the United States, including in California and in this District, through brick-and-mortar stores, and at through numerous retailers online.

10.     Defendant Glanbia Nutritionals Inc. is a Delaware corporation. Upon information and belief, Glanbia Nutritionals Inc. markets, distributes, and retails its Products throughout the United States, including in California and in this District, through brick-and-mortar stores, and at through numerous retailers online.

11.     Defendant Glanbia Nutritionals Services, LLC is a Delaware limited liability company. Upon information and belief, Glanbia Nutritionals Services, LLC markets, distributes, and retails its Products throughout the United States, including in California and in this District, through brick-and-mortar stores, and at through numerous retailers online.

12.     SlimFast is a consumer nutrition brand wholly owned and controlled by Glanbia PLC or one of Glanbia PLC's affiliates/subsidiaries.  Glanbia PLC is an Ireland-based company that owns several global nutrition brands, and is the ultimate parent of all entities bearing the Glanbia name (and some without Glanbia in the name).  In its 2020 annual report to investors, Glanbia PLC has described SlimFast as part of the "Glanbia Performance Nutrition family," stating as follows on page 2:

**CLASS ACTION COMPLAINT**

> The Glanbia Performance Nutrition family has a portfolio of leading brands in sports and lifestyle nutrition. Our mission is to inspire people everywhere to achieve their performance and healthy lifestyle goals. Our flagship brands are OPTIMUM NUTRITION™ and SLIMFAST™ which occupy leadership positions in sports nutrition and weight control respectively.[1]

13.     Glanbia operates in the United States through subsidiaries. The packaging for the Products state that they are "distributed by SlimFast," which, to the best of Plaintiffs' knowledge, is a brand and not an entity that can be sued.   Additional publicly available information evidences that the "Glanbia Sports Nutrition family" markets, advertises, manufactures, and sells the Products.  For example, on February 9, 2021, the launching of a new SlimFast website in the U.S. (which sold, and continues to sell, the Products) was announced on Glanbia.com.[2]

14.      Upon information and belief, the wrongful acts alleged herein are the product of joint, concerted, and combined actions by all of the Glanbia "family" entities named as defendants. Should discovery reveal that one or more of the Glanbia entities named as defendants and not others are the appropriate parties, and/or that other entities not named as defendants are responsible, Plaintiffs will amend their complaint accordingly.

## JURISDICTION AND VENUE

15.     This Court has personal jurisdiction over Defendants.  Defendants purposefully avail itself of the California consumer market and distributes the Products to hundreds of locations within this District and thousands of locations throughout California, where the Products are purchased by consumers every day

16.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Class, any member of  Plaintiffs' Class is a

---

[1] https://www.glanbia.com/sites/glanbia/files/glanbia/investors/annual-report/2021/Glanbia-Annual-Report-20.pdf (last visited February 28, 2022).
[2] https://www.glanbia.com/our-stories/new-slimfast-online-store-goes-live (last visited February 28,2022).

**CLASS ACTION COMPLAINT**

citizen of a State different from any Defendants, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

17.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff Sheree Silva lives in and made purchases of Products in this District, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the products, occurred within this District and the Defendants conduct business in this District.

## FACTUAL ALLEGATIONS

18.     At all relevant times, Defendants have marketed its Products in a consistent and uniform manner. Defendants sell the Products in all 50 states on the SlimFast website and through various distributors and mass retailers across the United States.

### Diabetes in The U.S.A.

19.     Diabetes mellitus ("diabetes") is a serious chronic disease that stems from the body's inability to properly regulate blood sugar (glucose), due to problems with the body's production and use of the pancreas-produced hormone insulin. Insulin's role is to regulate the absorption of glucose from the blood into the cells for use as energy. When the body's ability to make and/or utilize insulin is compromised, too much glucose remains in the blood, leading to significant health problems. There are three types of diabetes:

      a.  Type 1: this results when the body does not produce enough insulin, resulting in high levels of glucose in the blood. People with Type 1 diabetes are typically diagnosed as children and must take insulin externally to manage their condition. Type 1 diabetes accounts for 5%-10% of diabetes in the United States. [3]

      b.  Type 2: accounting for 90%-95% of all diabetes cases, Type 2 diabetes develops typically later in life than Type 1, and results not from the body's lack of insulin but

---

[3]  *See* https://www.cdc.gov/diabetes/basics/diabetes.html (last visited October 25, 2021).

**CLASS ACTION COMPLAINT**

from the body's inability to keep blood sugar at normal levels using the insulin that is produced, often because of the body acquiring insulin resistance. *See e.g. id.*

    c.    Gestational Diabetes: develops during pregnancy in pregnant women who have never had diabetes outside of pregnancy. The condition typically disappears after pregnancy. *See id.* Type 2 diabetes often, but nor always, results from unhealthy weight.

20.    Diabetes of all types are a serious disease whose damaging effects increase over time. Diabetes symptoms typically include: frequent urination, thirst that is difficult to quench, hunger, blurred vision, fatigue, dry skin, slow healing sores, more than the normal number of infections.

21.    Diabetes can often lead to more serious symptoms including death from increased risks of cardiac events, or organ failure. According to the U.S. Center for Disease Control (CDC) diabetes is also leading cause of death and serious health complications in the U.S., and Type 2 diabetes in particular has been growing rapidly in the United States. The CDC's website reports as follows:

- 34.2 million US adults [more than 10% of the entire population of the U.S.] , have diabetes, and 1 in 5 of them don't know they have it.
- Diabetes is the seventh leading cause of death in the United States.
- Diabetes is the No. 1 cause of kidney failure, lower-limb amputations, and adult blindness.
- In the last 20 years, the number of adults diagnosed with diabetes has more than doubled.[4]

22.    There has been significant reporting on the growing dangers of Type 2 diabetes in the general media over the past several years, leading to awareness of the disease among American consumers.

---

[4]    *See* https://www.cdc.gov/diabetes/basics/diabetes.html (last visited October 25, 2021).

6

**CLASS ACTION COMPLAINT**

23.     In addition to diagnosed diabetes, 88 million American adults (1-in-3 Americans) are "prediabetic," which the CDC defines as follows:

> Prediabetes is a serious health condition where blood sugar levels are higher than normal, but not high enough yet to be diagnosed as type 2 diabetes. Approximately 88 million American adults—more than 1 in 3—have prediabetes. Of those with prediabetes, more than 84% don't know they have it. Prediabetes puts you at increased risk of developing type 2 diabetes, heart disease, and stroke.[5]

24.     People with Type 2 diabetes typically are prescribed medications to control their blood glucose levels, while Type 1 diabetics typically also are prescribed insulin, often in combination with other medications:

> You may be able to manage your diabetes with healthy eating and being active, or your doctor may prescribe insulin, other injectable medications, or oral diabetes medicines to help manage your blood sugar and avoid complications. You'll still need to eat healthy and be active if you take insulin or other medicines. It's also important to keep your blood pressure and cholesterol close to the targets your doctor sets for you and get necessary screening tests.[6]

25.     While the mechanism of action among these prescription medications differ, all of them ultimately seek to control and manage blood glucose levels, because it is the level of glucose in the blood that defines diabetes: a diagnosis of diabetes or prediabetes is triggered by measuring the level of glucose in the blood.

26.     For example, Lantus, the best selling diabetes medication (and the 5th best selling medication worldwide), advertises its ability to control blood glucose as follows:

> If your doctor said it's time for insulin, it's important to understand your options. Insulin is a hormone made in your body. If your doctor mentioned insulin, it can mean your body is no longer making, or is having trouble using, its own insulin. Millions of people count

---

[5]     *See* https://www.cdc.gov/diabetes/basics/prediabetes.html (last visited October 25, 2021).

[6]     See https://www.cdc.gov/diabetes/basics/type2.html (last visited October 25, 2021).

**CLASS ACTION COMPLAINT**

on once-daily Lantus®, as well as other diabetes medicines made by Sanofi, to help lower their blood sugar. Learn more below, then talk to your doctor to find out which insulin treatment may be right for you.[7]

27.    Similarly, Farxiga, another top selling medication for Type 2 diabetes, represents that it is used to "improve blood sugar control along with diet and exercise." [8]

28.    With the dramatic rise of diabetes and prediabetes, companies have tapped into consumer anxieties about preventing and treating diabetes and prediabetes. This action is brought because of Defendants' deceptive advertising and misbranding of an over-the-counter [nutritional supplement] protein drink.

### I.    **Defendants Make Improper Health Claims**

29.    Food manufacturers are required to comply with state and federal laws and regulations that govern the labeling of food products. Among these is the Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq* ("FDCA") and its labeling regulations, including those in 21 C.F.R. § 101.

30.    California's Sherman Law has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

31.    As alleged herein, Defendants have violated the FDCA, the Sherman Law, and consumer protection statutes.

32.    The Products are represented on the front of their labels to be "diabetic weight loss meal bars", "diabetic weight loss meal shakes", and "diabetic weight loss snacks". As such they are "food" pursuant to 21 U.S.C. § 321(f), and the products as a whole and their ingredients are "substances" pursuant to 21 CFR § 101.14(a)(2), and such as Defendants may not make health claims about the Products unless such claims are expressly reviewed and preauthorized by the FDA. *See* 21 C.F.R. 101.14(e). A product that makes unauthorized health claims is misbranded

---

[7]    https://www.lantus.com/new-to-insulin/starting-insulin (Last visited October 25, 2025).
[8]    https://www.farxiga.com/ (Last visited October 25, 2025).

=
**CLASS ACTION COMPLAINT**

pursuant to 21 USCS § 343(r). Pursuant to the California Sherman law, "[i]t is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded." Cal. Health & Saf. Code § 110760.

33.   Cal. Health & Safety Code § 110760 (Deering, Lexis Advance through Chapter 1-100, 102, 103, 105-112, 114, 115, 117-123, 125-142, 145-160, 164, 173, 174, 177, 180-184, 276, 294, and 307 of the 2021 Regular Session, including all urgency legislation effective July 22, 2021 or earlier)

34.   A health claim is "any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication . . .  characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). Substance "means a specific food or component of food. . ." 21 C.F.R. § 101.14(a)(2).  "Disease or health-related condition means damage to an organ, part, structure, or system of the body such that it does not function properly  . . . or a state of health leading to such dysfunctioning." 21 C.F.R. § 101.14(a)(5).

35.   The Products are foods, and diabetes is disease and/or health-related condition.

36.   Defendants makes a litany of health claims for the Products:

   a.   "SlimFast raised the bar and developed a full line of delicious diabetic weight loss meal replacements, designed to balance sugar and keep glucose intake in check". [9]

   b.   "Specially formulated, our SlimFast shake mixes for Diabetic Weight Loss help manage carbs & sugar as part of a balanced diet."[10]

   c.   "With SlimFast, those managing their glucose intake can simultaneously satisfy their sweet tooth and their nutritional needs. Whether you're snacking on a delicious

---

[9] https://www.amazon.com/SlimFast-Diabetic-Weight-Peanut-Butter/dp/B07YLLYCXJ/ref=sr_1_5?dchild=1&keywords=diabetic+weight+loss+slim+fast+snack&qid=1635952877&qsid=137-9462186-3603230&rdc=1&sr=8-5&sres=B07YLLYCXJ%2CB07KMXSQVJ%2CB07YLKQY73%2CB07H7NPY5D%2CB00MH8T09U%2CB072V4FHW4%2CB002NGOLGI%2CB016ZG0MC8%2CB000NT16MY%2CB0187HZODK%2CB08L6W3W63%2CB07H7L9TSH%2CB07YLL7C1H%2CB07D7H3KMB%2CB07GNZNNFN%2CB0015068PA%2CB000PKMTIQ%2CB077BRFSZL%2CB016ZG0MEQ%2CB07X39RHLK (last visited November 3, 2021).

[10] *Id.*

9

CLASS ACTION COMPLAINT

Diabetic Peanut Butter Cup or a Nutty Caramel & Chocolate Cluster to keep cravings at bay, you can be confident that SlimFast has your unique needs in mind."[11]

d.   "The brand that has been trusted for over 40 years introduces a weight management option for persons living with Type II Diabetes. Backed by multiple clinical studies, the clinically proven SlimFast Plan* has been shown to be a suitable approach for diabetic weight loss. With mouthwatering flavors like nutty caramel and chocolate, and peanut butter cup, this confection-inspired line of delicious and nutritious diabetic options is proving that it doesn't have to be a struggle to manage carbs and sugar. Choose from an array of meal replacement shake mixes, meal bars, and scrumptious snacks that perfectly complement The Plan."[12]

e.   "Now a weight management option for persons living with Type II diabetes. The SlimFast Plan* has multiple clinical weight loss studies that prove its suitable for people living with Type II diabetes. As a part of the Plan, our Diabetic Weight Loss products have the flavors you love, help manage carbs and sugar, are low in net carbs, and offer a variety of additional nutritional benefits. And, you have the freedom to enjoy your favorite meals!"[13]

37.   A few illustrations of the representations depicted by Defendants are provided below:

---

[11] *Id.*
[12] *Id.*
[13] *Id.*

10

=

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





**CLASS ACTION COMPLAINT**







**Losing Weight While Managing Sugars is as Easy as 1-2-3**

The brand that has been trusted for over 40 years introduces a weight management option for persons living with Type II Diabetes. Backed by multiple clinical studies, the clinically proven SlimFast Plan* has been shown to be a suitable approach for diabetic weight loss. With mouthwatering flavors like nutty caramel and chocolate, and peanut butter cup, this confection-inspired line of delicious and nutritious diabetic options is proving that it doesn't have to be a struggle to manage carbs and sugar. Choose from an array of meal replacement shake mixes, meal bars, and scrumptious snacks that perfectly complement The Plan.







**Welcome to SlimFast Diabetic Weight Loss**

Now a weight management option for persons living with Type II diabetes. The SlimFast Plan* has multiple clinical weight loss studies that prove its suitable for people living with Type II diabetes. As a part of the Plan, our Diabetic Weight Loss products have the flavors you love, help manage carbs and sugar, are low in net carbs, and offer a variety of additional nutritional benefits. And, you have the freedom to enjoy your favorite meals!

*When used as part of the SlimFast Plan (a reduced-calorie diet, regular exercise, and plenty of fluids). Read label prior to use. This product is intended to help manage carb & sugar intake and not intended for the treatment or prevention of disease, including Diabetes Type I, Type II, or Gestational Diabetes. Check with your doctor if you have been diagnosed with Type I, Type II or Gestational Diabetes, are insulin dependent, nursing, pregnant, are under 18, or following a doctor-prescribed diet.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





**CLASS ACTION COMPLAINT**

38.     When Defendants' claims are viewed in their totality, they are either explicitly or implicitly claiming to prevent disease and/or treat disease, which makes the Products attractive to people that wish to lower their risk of becoming diabetic or prediabetic, and is also attractive those that are already diagnosed and wish to mitigate their diagnosed diabetes or diagnosed prediabetes.

39.     The *sine qua non* of diabetes is the body's inability to properly manage blood glucose. As alleged above, the Products specifically state they can are for "Type II Diabetes", "keep glucose intake in check", and are "for those managing their glucose intake," and that consumers "can be confident that SlimFast has your unique needs in mind." Therefore, a food or shake that claims to manage and control blood glucose levels, and that purportedly is made with the unique needs of Diabetics, is representing to reasonable consumers that it can prevent and treat diabetes.These claims mislead consumers into believing reasonably that they can use the Products to prevent and treat diabetes.

40.     Pursuant to FDA regulations, express or implied health claims must be specifically preauthorized by the FDA. *See* 21 C.F.R. § 101.14(e). The health claims made by Defendants were not authorized, and are therefore misbranded pursuant to 21 USCS § 343(r).

## II.     Plaintiffs' Experiences

**Emanuel Aliva**

41.     On or about November 2, 2021, Mr. Aliva purchased the Products from a Target in Woodland Hills, California. Mr. Alvia paid approximately $80 for the Products he purchased. Although the Products were more expensive than other choices he viewed, Mr. Aliva chose to pay the premium price based upon the various claims and promises made by Defendants regarding the Products' diabetes-related representations (as identified above), including the representations that it controls and manages glucose levels. At the time of his purchase, Mr. Aliva relied on Defendants' diabetes-related factual representations on the Products' label. All of the diabetes-related representations made by Defendants regarding the Products purchased by Mr. Aliva are

=
**CLASS ACTION COMPLAINT**

false because Defendants did not receive FDA approval for such claims and the claims viewed in their totality implicitly or explicitly claim to mitigate, prevent disease. These claims, alone or in tandem, are deceptive and violate federal regulations. If Defendants changed the labeling on the Products, Mr. Aliva would consider purchasing the Products again in the future.

**Michael Sizemore**

42.    On or about August 10, 2021, Mr. Sizemore purchased the Products from a Sam's Club in Folsom, California. Although the Products were more expensive than other choices he viewed, Mr. Sizemore chose to pay the premium price based upon the various claims and promises made by Defendants regarding the Products' diabetes-related representations (as identified above), including the representations that it controls and manages glucose levels. At the time of his purchase, Mr. Sizemore relied on Defendants' diabetes-related factual representations on the Products' label. All of the diabetes-related representations made by Defendants regarding the Products purchased by Mr. Sizemore are false because Defendants did not receive FDA approval for such claims and the claims viewed in their totality implicitly or explicitly claim to mitigate, prevent disease. These claims, alone or in tandem, are deceptive and violate federal regulations. If Defendants changed the labeling on the Products, Mr. Sizemore would consider purchasing the Products again in the future.

**Carole Schauer**

43.    On or about February 1, 2021, Ms. Schauer purchased the Slimfast Diabetic Friendly Meal Replacement Powder, Chocolate Milkshake and Vanilla Milkshake from a Walmart located at 20251 CA-18, Apple Valley, CA, 92307. Although the Products were more expensive than other choices she viewed, Ms. Schauer chose to pay the premium price based upon the various claims and promises made by Defendants regarding the Products' diabetes-related representations (as identified above), including the representations that it controls and manages glucose levels. At the time of her purchase, Ms. Schauer relied on Defendants' diabetes-related factual representations on the Products' label. All of the diabetes-related representations made by Defendants regarding the Products purchased by Ms. Schauer are false because Defendants did

**CLASS ACTION COMPLAINT**

not receive FDA approval for such claims and the claims viewed in their totality implicitly or explicitly claim to mitigate, prevent disease. These claims, alone or in tandem, are deceptive and violate federal regulations. If Defendants changed the labeling on the Products, Ms. Schauer would consider purchasing the Products again in the future.

**Sheree Silva**

44.    On or about June 6, 2021, Ms. Silva purchased the SlimFast Diabetic Friendly Meal Replacement Powder- Chocolate Milkshake from a Walmart located in Yuba City, California for approximately $8. Although the Products were more expensive than other choices she viewed, Ms. Silva chose to pay the premium price based upon the various claims and promises made by Defendants regarding the Products' diabetes-related representations (as identified above), including the representations that it controls and manages glucose levels. At the time of her purchase, Ms. Silva relied on Defendants' diabetes-related factual representations on the Products' label. All of the diabetes-related representations made by Defendants regarding the Products purchased by Ms. Silva are false because Defendants did not receive FDA approval for such claims and the claims viewed in their totality implicitly or explicitly claim to mitigate, prevent disease. These claims, alone or in tandem, are deceptive and violate federal regulations. If Defendants changed the labeling on the Products, Ms. Silva would consider purchasing the Products again in the future.

**Omar Aldamen**

45.    On or about June 15, 2019, Mr. Aldamen purchased SlimFast Diabetic Friendly Meal Replacement Powder, Chocolate Milkshake from Walmart and Amazon for roughly $15. Although the Products were more expensive than other choices he viewed, Mr. Aldamen chose to pay the premium price based upon the various claims and promises made by Defendants regarding the Products' diabetes-related representations (as identified above), including the representations that it controls and manages glucose levels. At the time of his purchase, Mr. Aldamen relied on Defendants' diabetes-related factual representations on the Products' label. All of the diabetes-related representations made by Defendants regarding the Products purchased by Mr. Aldamen are

**CLASS ACTION COMPLAINT**

false because Defendants did not receive FDA approval for such claims and the claims viewed in their totality implicitly or explicitly claim to mitigate, prevent disease. These claims, alone or in tandem, are deceptive and violate federal regulations. If Defendants changed the labeling on the Products, Mr. Aldamen would consider purchasing the Products again in the future.

## CLASS ACTION ALLEGATIONS

46.     Plaintiffs bring this class action lawsuit on behalf of themselves and proposed Class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

47.     Plaintiffs seek certification of the following Class:

> **California Class:** All persons in the State of California who purchased the Products (the "California Class") for personal use and not for resale.

48.     Members of the class described are referred to as "Class Members" or members of the Class.

49.     The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

50.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Class are presently unknown to Plaintiffs but may be

=
**CLASS ACTION COMPLAINT**

ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

52.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

a.     Whether the Products contents are mislabeled as dietary supplements, and are being sold in violation of the FDCA;

b.     Whether Defendants iares explicitly or implicitly claiming that its Products can mitigate or prevent a disease or class of diseases in violation of the FDCA and DSHEA;

c.     Whether Defendants knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

d.     Whether Defendants knew or should have known that the representations and advertisements regarding the Products was false and misleading;

e.     Whether Defendants' conduct violates public policy;

f.     Whether Defendants' acts and omissions violate California law;

g.     Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

h.     Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

i.     Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

53.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved.

Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

54.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendants in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein.

55.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

56.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

**CLASS ACTION COMPLAINT**

**COUNT I**
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq.  ("UCL")**
**(On Behalf of Plaintiffs and  the California Class)**

57.     Plaintiffs Bruce Horti, Emanuel Aliva, Sandra George, and Howard Yosha reallege ("Plaintiffs" for the purposes of this section) and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

58.     Plaintiffs brings this claim individually and on behalf of all members of the California Subclass against Defendants.

59.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

60.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

61.     <u>Unlawful</u>:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.     The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

b.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

c.     The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; as incorporated into California law in the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*.

62.     <u>Unfair</u>: Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

63.     Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the FDCA, and the California Sherman Food, Drug, and Cosmetic Law.

**CLASS ACTION COMPLAINT**

64.     Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

65.     <u>Fraudulent</u>:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

66.     As set forth in detail above, Defendants have fraudulently misbranded and mislabeled in violation of the FDCA; and has made false and misleading statements that are likely to mislead reasonable consumers to believe the Products have been scientifically established to be effective, which they have not been

67.     Defendants profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

68.     Plaintiffs and Class Members are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continue to disseminate misleading information on the Products' packaging.  Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

69.     Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members.  Plaintiffs have suffered injury in fact as a result of Defendant's unlawful conduct, by paying more for the Products that they otherwise would have, or not purchasing it altogether.

70.     In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

71.     Plaintiffs and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**<u>COUNT II</u>**
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**

21

=

**CLASS ACTION COMPLAINT**

**(On Behalf of Plaintiffs and the California Class)**

72.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

73.     Plaintiffs brings this claim individually and on behalf of the members of the California Class against Defendants.

74.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

75.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

76.     As alleged in detail above, the advertisements, labeling, policies, acts, and practices of Defendants relating to the Products misled consumers acting reasonably as to the ingredients and effectiveness of the Products.

77.     Plaintiffs suffered injury in fact as a result of Defendants' actions as set forth herein because they purchased the Products in reliance on Defendants' labeling claims that under the FDCA and DSHEA amount to intentional mislabeling and misbranding of the Products.

78.     Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Products in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from its advertising.

79.     Defendants profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

80.     As a result, Plaintiffs, the California Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which

**CLASS ACTION COMPLAINT**

1   Defendants were unjustly enriched.

2        81.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of themselves and

3   the California Class, seek an order enjoining Defendants from continuing to engage in deceptive

4   business practices, false advertising, and any other act prohibited by law, including those set forth

5   in this Complaint.

**COUNT III**
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of Plaintiffs and the California Class)**

9        82.    Plaintiffs incorporate by reference the allegations contained in the preceding

10  paragraphs as if fully set forth herein.

11       83.    Plaintiffs brings this claim individually and on behalf of the members of the

12  California Class against Defendants.

13       84.    Plaintiffs at this time seeks only equitable relief, and not damages, for this claim.

14  Plaintiff may amend their complaint to seek money damages pursuant to Cal. Civ. Code § 1782(a).

15       85.    Defendants are "persons" under the Legal Remedies Act, Cal. Civ. Code § 1761(c).

16       86.    Plaintiffs and Subclass members are "consumers" under the Legal Remedies Act,

17  Cal. Civ. Code § 1761(d).

18       87.    The CLRA prohibits deceptive practices in connection with the conduct of a

19  business that provides goods, property, or services primarily for personal, family, or household

20  purposes.

21       88.    Defendants' false and misleading labeling and other policies, acts, and practices

22  were designed to, and did, induce the purchase and use of the Products for personal, family, or

23  household purposes by Plaintiffs and Subclass Members, and violated and continue to violate the

24  following sections of the CLRA:

25       a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which

26  they do not have;

27       b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade

28

23

**CLASS ACTION COMPLAINT**

1   if they are of another;

2        c.      § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

3        d.      § 1770(a)(16): representing the subject of a transaction has been supplied in

4   accordance with a previous representation when it has not.

5        89.     Defendants profited from the sale of the falsely, deceptively, and unlawfully

6   advertised Products to unwary consumers.

7        90.     Defendants' wrongful business practices constituted, and constitute, a continuing

8   course of conduct in violation of the CLRA.

9        91.     Therefore, Plaintiffs seek equitable relief under the Consumers Legal Remedies

10  Act, including injunctive relief.

                                    <u>COUNT IV</u>
11                  **Breach of Express Warranty Under California Law**
                     **(On Behalf Plaintiffs and the California Class)**
12

13       92.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

14       93.     Plaintiffs, and each member of the California Class, formed a contract with

15  Defendants at the time Plaintiffs and each member of the California Class purchased the Products.

16       94.     The terms of the contract include the promises and affirmations of fact made by

17  Defendants on the Products' packaging and through marketing and advertising, as described

18  above.

19       95.     This labeling, marketing, and advertising constitute express warranties and became

20  part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the

21  members of the California Class and Defendants.

22       96.     Defendants also made claims that were implied disease claims under 21 C.F.R.

23  101.93(g)(2), and therefore the Products are misbranded under 21 U.S.C. 343(r)(6). This breaches

24  the warranties made by Defendants which Plaintiffs' reasonably relied upon at the time of

25  purchase.

26       97.     Plaintiffs and the members of the California Class performed all conditions

27  precedent to Defendants' liability under this contract when they purchased the Products.

28
**CLASS ACTION COMPLAINT**

98.    Defendants breached express warranties about the Products and their qualities because Defendants' Products' representations, purports the Products control blood glucose, when it does not do so. The representations that the products make a number of implied disease claims, including but not limited to: "help manage carbs & sugar" and "keep glucose intake in check".

99.    Plaintiffs and each of the members of the California Class would not have purchased the Products had they known they were not approved by the FDA to make the aforementioned representations.

100.    Plaintiffs relied upon the representations made by Defendants at the time of purchase, and were deprived of the benefit of the bargain as a result of Defendants' conduct.

101.    On December 8, 2021, Plaintiffs Aliva, Sizemore, and Schauer gave notice to Defendants of its breach of express warranties.

102.    On February 9, 2022, Defendant Glanbia Performance Nutrition (NA), Inc. replied and did not remedy the breaches of express warranty in Plaintiffs Aliva, Sizemore, and Schauer's correspondence.

103.    As a result of Defendants' breach of warranty, Plaintiffs and each of the members of the Classes have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

**COUNT V**
**Unjust Enrichment**
**(In The Alternative To Count V And On Behalf Plaintiffs and the New York and California Class)**

104.    Plaintiffs repeat and re-allege the allegations above as if set forth herein.

105.    Plaintiffs and California Class members conferred tangible and material economic benefits upon Defendants by purchasing Defendants' Products. Plaintiffs and California Class members would not have purchased the Products had they known they were not approved by the FDA for the purposes stated on the Products.

106.    Defendants have been unjustly enriched in retaining the revenues derived from the

**CLASS ACTION COMPLAINT**

purchase of the Products by Plaintiffs and the other members of the California Class.

107.    Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the California Class members because they would have not purchased the Products if Defendants had not mislead them into believing the Product help "control glucose" and "manage blood sugar"..

108.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the California Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the other members of the California Class for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Defendants as follows:

A.    Enter an order certifying the proposed Class designating Plaintiffs as the class representative, and designating the undersigned as class counsel;

B.    Enter an order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law, except that no monetary damages are presently sought for violations of the California Consumers Legal Remedies Act;

C.    Declare that Defendants are financially responsible for notifying all Class members of the mislabeling and misbranding of the Products;

D.    Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendants to make full restitution to Plaintiffs and the members of the Class, except that no monetary relief is presently sought for violations of the California Consumers Legal Remedies Act;

E.    Defendants shall audit and reassess all prior customer claims regarding the

**CLASS ACTION COMPLAINT**

1    Products, including claims previously denied in whole or in part;

2    F.    An order awarding Plaintiff sand the Class pre-judgment and post-judgment interest

3          as allowed under the law;

4    G.    Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution

5          of this action, including expert witness fees; and

6    H.    Grant such other and further relief as this Court deems just and appropriate.

7                                    **JURY DEMAND**

8

9    Plaintiffs hereby demand a trial by jury on all issues so triable.

10   Dated: March 4, 2022                          Respectfully Submitted,

11   By:

12   **MILBERG COLEMAN BRYSON**
13   **    PHILLIPS GROSSMAN, PLLC**

14                                      /s/ Alex R. Straus
15                                      Alex R. Straus, Esq. (SBN 321366)
16                                      280 South Beverly Drive
                                        Beverly Hills, CA 90212
17                                      Tel.: (917) 471-1894
                                        Fax: (310) 496-3176
18                                      Email: astraus@milberg.com

19                                      Hunter Bryson*
                                        *hbryson@milberg.com*
20                                      **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN PLLC**
21                                      900 West Morgan Street
22                                      Raleigh, NC 27603
                                        Tel.: (919) 539-2708
23                                      Fax: (310) 496-3176

24                                      Andrei Rado*
25                                      **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN PLLC**
26                                      *arado@milberg.com*
                                        100 Garden City Plaza
27                                      Garden City, NY 11530
                                        Tel.: (212) 594-5300

28                                      27
                                        =
                              **CLASS ACTION COMPLAINT**

Fax: (310) 496-3176

*Pro Hac Vice* Application Forthcoming

**CLASS ACTION COMPLAINT**